Maurice B. VerStandig, Esq.
Bar No. MD18071
Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 26-464-ELG |
| | ) | (Chapter 11) |
| Synergy Reorg, LLC.[1] | ) | |
| | ) | |
| Debtors. | ) | Joint Administration Motion Pending |

**APPLICATION TO APPROVE EMPLOYMENT
OF LAUREN P. BERRET OF EISNER ADVISORY
GROUP LLC AS CHIEF RESTRUCTURING OFFICER**

Come now Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd. (collectively, the "Debtors"), by and through undersigned proposed counsel, pursuant to sections 327 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), as well as Federal Rule of Bankruptcy Procedure 2014, and apply to employ Lauren P. Berret ("Ms. Berret") of Eisner Advisory Group LLC as chief restructuring officer ("CRO") of the Debtors, and in support thereof state as follows:

[1] The Debtors in these cases are Synergy Reorg, LLC.; Synergy CHC Corp.; Synergy CHC Inc.; Hand MD Corp.; Synergy CHC Mexico; and NomadChoice Pty, Ltd.

## I. Introduction

Shortly before commencing these cases, the Debtors appointed Ms. Berret to act as their CRO, vesting her with authority to file petitions for bankruptcy relief and furnishing her with access to corporate books and records. The Debtors now desire that Ms. Berret be a CRO who cannot be removed by the Debtors' boards or equity interests but, rather, only by this Honorable Court (albeit with equity, officers, and directors certainly having standing to file an appropriate motion and assert the existence of cause for removal).

As will become apparent in the coming days and weeks, the Debtors in these cases are victims of the tortious conduct of a secured lender and a merchant cash advance ("MCA") entity. The Debtors are also, though, the proud custodians of two iconic brands alongside myriad other intellectual property assets, with inventory that remains on store shelves not merely the nation over but, too, internationally. These are going to be complex cases—both in the legal sense of the term and the lay sense of the term. And the Debtors think it imperative, as they look to the facets of bankruptcy to efficiently liquidate and recover as much as possible for the benefit of creditors and stakeholders, that their representative have maximum credibility, extraordinary knowhow, and a clearly-defined abiding loyalty to the estates. Employing Ms. Berret as CRO will achieve these ends.

To be clear, the Debtors' existing chief executive—Jack Ross—and other key figures do *not* want for credibility. These are hardworking individuals who have toiled unendingly for the benefit of the Debtors. These entities and brands would not hold their cherished status but for the efforts of existing management. And the Debtors are grateful that Mr. Ross, and others, will remain available during these proceedings to advise, consult, and lend institutional knowledge, while still overseeing much of the day-to-day operations of active businesses. The Debtors simply wish to be

emphatic and clear that it is Ms. Berret who will lead the charge from here on out, and it is Ms. Berret who will ultimately be tasked with turning out the final light.

## II. Standard

Familiarly, a debtor-in-possession (standing in the shoes of a trustee) is permitted to "employ one or more … professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out the [debtor-in-possession's] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).

The Federal Rules of Bankruptcy Procedure, in turn, require an application such as this shall, *inter alia*:

> … state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

## III. Formalistic Recitations

Pursuant to the rigors of the above-cited rule, the Debtors note that (i) Ms. Berret is the person to be employed; (ii) Ms. Berret has been selected based on her sterling credentials, familiarity with the Debtors, familiarity with the reorganization and liquidation processes, and esteemed reputation; (iii) as CRO, Ms. Berret will act as the debtor-in-possessions' representative in this case, being vested with complete decision-making authority; (iv) Ms. Berret seeks to be compensated at her usual and customary hourly rate, with other employees of her firm being similarly compensated at their usual and customary hourly rates, with all compensation being subject to the approval of this Honorable Court and with said compensation to come from the Debtors; and (v) Ms. Berret's connections, *vel non*, with the Debtors, creditors, other parties in

interest, their respective attorneys and accountants, the United States Trustee, and persons employed in the office of the United States Trustee, are set forth in the attached declaration.

## IV. Argument

### a. Ms. Berret is Well Qualified both Legally and Pragmatically

No doubt already well known to this Honorable Court, Ms. Berret is a Managing Director at Eisner Advisory Group, LLC in Philadelphia, Pennsylvania. Holding both accounting and law degrees, Ms. Berret is a certified public accountant and a member, in good standing, of the bars of the Commonwealth of Pennsylvania and the District of Columbia.

A seasoned bankruptcy and insolvency professional, Ms. Berret worked as a consumer bankruptcy attorney early in her career, later going on to work as a senior consultant—and then manager—at Baker Tilly Virchow Krause, LLP. Her career then took her to CBIZ Forensic Consulting Group and, ultimately, from April 2022 onward, to Eisner Advisory Group, LLC.

Ms. Berret is a member of the 2024 American Bankruptcy Institute "40 Under 40" class (a particularly distinguished class, at that). She is also the co-chair of the IWIRC Greater Philadelphia Network, a former recipient of the Turnaround Management Association's "Emerging Leader" award, and—from her time as a consumer bankruptcy attorney—a "Rising Star" in Super Lawyers.

Ms. Berret regularly speaks on insolvency-centric issues, as evidenced by her curriculum vitae, attached hereto. She has also published various articles on matters of corporate management. In this Honorable Court, she is presently serving as an expert witness in two cases involving MCA debt.

It is genuinely difficult to conceive of a better qualified CRO than Ms. Berret. Her academic credentials are sterling, her professional licensure is precisely on-point, she has devoted her career to the insolvency sector, and her credibility is topnotch. This is the precise variety and

caliber of person who can bring command and ethos to the instant cases. And it is no coincidence the Debtors chose Ms. Berret, pre-petition, to guide their arc through chapter 11.

**b. The Debtors and Their Estates Will Benefit from the Services of a CRO**

The phrase "Chief Restructuring Officer" or "CRO" appears in approximately 1,052 bankruptcy court opinions, published and unpublished, discoverable through a LexisNexis search; none of the opinions come from this Honorable Court. No doubt, CROs have served in cases in this district previously (including at least one involving a debtor represented by undersigned counsel), and currently serve in neighboring districts but, whether by reason of such never proving sufficiently controversial to merit a written opinion or otherwise, there is no binding precedent in the District of Columbia. It is hoped the relief sought herein will not prove so contentious as to invite the creation of such precedent.

Ms. Berret was appointed CRO, by the Debtors, pre-petition, in accord with each Debtors' governing procedures (being a board of directors resolution in one instance and a simpler resolution in other instances). Technically speaking, this appointment was no different than a board naming a new chief executive officer, chief financial officer, chief technology officer, or chief marketing officer; the board—in its statutorily-vested wisdom—identified a need to engage an officer and appointed Ms. Berret to the position. Since this occurred pre-petition, leave of court was neither required nor obtainable.

What the Debtors seek now is to cement that appointment. Bankruptcy courts are vested with the power to appoint a "Responsible Officer" for a debtor-in-possession. *Matter of Gaslight Club, Inc.*, 782 F.2d 767, 771 (7th Cir. 1986) (citing *In re FSC Corp.*, 38 B.R. 346 (Bankr. W.D. Penn. 1983)). And this Honorable Court does, too, have the authority to make such appointments in a manner that restricts the subsequent removal of the responsible officer. *See, e.g.*, *In re K.G.*

*IM, LLC*, 620 B.R. 469, 476 (Bankr. S.D.N.Y. 2020) (approving the appointment of a CRO with "all of the powers and duties to operate the Debtors' business" and the "sole and exclusive power to exercise all of the management, voting rights, consent rights and powers of each of the Debtors, without regard to, or requirement of, any management, voting rights, consent rights, consultation rights or powers of any person who has any such rights or powers under any of the Debtors' Operating Agreements…").

Indeed, even when the United States Bankruptcy Court for the Southern District of New York questioned if a bankruptcy court may independently appoint a CRO in the first instance (something not at issue *sub judice* since Ms. Berret was appointed pre-petition), that court still held, *inter alia*, "[s]ections 105(a) and 1107(a) may empower a bankruptcy court to prevent a debtor from removing a manager, officer or director, but they do not provide the Court with an independent power of appointment." *In re 1031 Tax Group, LLC*, 2007 WL 2085384, at *3 n. 4 (Bankr. S.D.N.Y. July 17, 2007).[2]

Here, the Debtors seek to employ Ms. Berret in a manner wholly consistent with *Gaslight Club*, *FSC Corp.*, *K.G. IM*, and *1031 Tax Group*. Ms. Berret was appointed pre-petition and thusly held the position of CRO at the time this case was filed. This application seeks only to formalize

---

[2] While the United States Trustee has, for more than two decades, informally suggested application of the so-called "Jay Alix Protocol," which notably curtails the purview of CROs, such a limiting approach has been rejected by multiple courts. *See, e.g.*, *In re McDermott Int'l, Inc*., 614 B.R. 244, 252–53 (Bankr. S.D. Tex. 2020) ("While innovative at its inception, the Alix Protocol has become a tool to avoid transparency and create inequity. Based on the Court's observations, applicants selectively comply with the protocol's requirements in a majority of cases. The protocol's suggestion that separate entities be utilized as artificial barriers creates confusion. . . These examples are but a sampling and tarnish the sanctity of a process that demands complete transparency. Moreover, the protocol is completely unnecessary."); *In re Blue Stone Real Estate, Const. & Dev. Corp*., 392 B.R. 897, 907 (Bankr. M.D. Fla. 2008) ("The so-called 'Jay Alix' protocol that depends upon section 363 for retention of an executive officer does not provide the Court the same ability to meet the twin goals of section 327 when the candidate for employment is also a professional.").

his ongoing employment and, per the foregoing cases, to establish an added layer of credibility by ensuring his employment not be compromised by threat of non-judicial removal.[3]

Ms. Berret was appointed, in the first instance, to ensure the Debtors are able to navigate the oft-tumultuous waters of chapter 11 with both independence and distinction. The Debtors entered bankruptcy acutely aware of the benefits of reputational value, understanding Ms. Berret to be well qualified to imbue the Debtors' cause with distinction and credibility.

## V. Conclusion

These are complex cases, involving a publicly traded company and its subsidiaries. The Debtors' products sit on store shelves the world over. The Debtors' brands have been developed over years upon years and stand out as iconic in nature, with enormous recognition amongst consumers. And the Debtors now seek to use chapter 11 to efficiently locate an heir to those brands, a buyer for that product, and a mechanism through which to pursue litigation rights. These are going to be tasks that require experience and expertise. And the Debtors have made the right decision in asking Ms. Berret to spearhead this process.

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) enter an order approving the employment of Lauren P. Berret of Eisner Advisory Group LLC as Chief Restructuring Officer to the Debtors; and (ii) afford such other and further relief as may be just and proper.

*[Signature and Certificate of Service on Following Page]*

[3] The distinction between these two goals is noteworthy. While the Debtors seeks judicial approval of both, it is not clear that such authorization is needed to continue the employment of an officer appointed pre-petition, whereas it is clear judicial approval is needed to ensure that officer not be subsequently removed by the Debtors' boards, equity interests, or other officers or directors.

Respectfully submitted,

Dated: September 7, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 991-1101
mac@mbvesq.com

Christianna A. Cathcart, Esq.
Bar No. ND0008
The VerStandig Law Firm, LLC
9812 Falls Road
#114-160
Potomac, Maryland 20854
Phone: (202) 655-2066
christianna@dcbankruptcy.com
*Proposed Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7th day of September, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig